BROCKWAY, Adm'r, *v.* MUTUAL BENEFIT LIFE INS. Co.

(*Circuit Court, W. D. Pennsylvania.* May, 1881.)

1. LIFE INSURANCE—"SOBER AND TEMPERATE."

The answers in the application, when made the basis of the agreement, are a material part of the contract, and, if untrue, the policy is void. But the burden of proof is on the company. The answers alleged that the applicant was sober and temperate, and had always been so.

*Held,* that the words "sober and temperate" are to be understood in their ordinary sense. They do not imply total abstinence. A moderate and temperate use of alcoholic stimulants is consistent with sobriety, but if used to such an extent as to produce frequent intoxication, the applicant is not sober and temperate.

2. EVIDENCE—NEGATIVE—POSITIVE.

Testimony of positive witnesses that they have seen the party intoxicated is not to be rejected on account of the negative testimony of others who have not.

3. INSURABLE INTERESTS.

    No one can procure valid insurance on a life unless he has an interest in that life.

4. SAME.

    A policy taken out nominally in the name of the assured, and for his benefit, but in reality as a cover for the benefit and in the interest of one having no insurable interest, is void.

5. SAME—CREDITORS.

    A creditor, however, has an insurable interest in the life of his debtor, and may take out a policy upon the life of the latter, or the policy may be taken out in the name of the debtor and assigned to the creditor.

*Hon. G. M. Harding, Asst. U. S. Dist. Atty. Wilson,* and *Col. Knorr,* for plaintiff.

*Messrs. Dalzell, Purviance & Stoner, contra.*

ACHESON, D. J., *(charging jury.)* This is an action by Charles B. Brockway, administrator of Beckwith S. Brockway, deceased, for the use of D. F. Seybert, against the Mutual Benefit Life Insurance Company of New Jersey. The suit is upon a policy of insurance dated March 12, 1868, for the sum of $10,000, issued by the defendant company upon the life of Beckwith S. Brockway, of Salem township, Luzerne county, Pa. On its face, the policy would seem to have been taken out by Beckwith S. Brockway on his own account. It appears to be an ordinary contract of life insurance between him and the company. By its terms, in consideration of the payment of the cash premium, and the annual premiums therein specified, the company agreed to pay the sum of $10,000 to the executors, administrators, or assigns of Beckwith S. Brockway, within 90 days after due notice and proof of his death, and proof of interest by the party claiming the insurance money.

    The plaintiff gave in evidence:

    (1) A paper dated March 8, 1868, containing the "declaration" of Beckwith S. Brockway, made upon his application for insurance, and certain printed questions propounded by the company, and the written answers thereto made by Brockway, his friend, and his physician, which answers are expressly made "the basis of the contract" between Brockway and the insurance company. (2) The policy of insurance issued by the Mutual Benefit Life Insurance Company in pursuance of that application, the policy containing a receipt for $650, the first premium. (3) A receipt dated March 12, 1869, for $650, the second year's premium. (4) Proof of the death of Beckwith S. Brockway on December 4, 1869. (5) And it was admitted that due proofs of death and interest were furnished the company on December 27, 1869.

    The plaintiff thus made out a *prima facie* case which would entitle him to your verdict, in the absence of any defence shown by counter evidence. But the insurance company has set up several defences,

and much evidence bearing thereon has been given. These defences, (so far as submitted to you,) and the evidence touching the same, both that on the part of the defence and that in rebuttal, deserve and should receive your careful and dispassionate consideration.

The "declaration" made by Beckwith S. Brockway on March 8, 1868, upon the faith of which the policy in suit issued, contains the following stipulation on his part, viz.:

" That I do not, nor will I, practice any bad or vicious habit that tends to the shortening of life. And I hereby agree that the answer made by myself, my physician, and my friend, shall be the basis of the contract between myself and the said company, and if any untrue or fraudulent allegation is contained in said answer, or this declaration, all moneys which shall have been paid to the said company on account of the assurance to be made in consequence thereof, shall be forfeited for the benefit of the company."

The answers, being thus made by the parties the basis of their agreement, became a material part of their contract, and absolutely binding upon the insured; and if any of the answers are shown to be untrue, the policy is void.

The defendant (the insurance company) alleges that several of the answers are untrue. Here it is proper for me to say that, as the defendant makes this allegation, the burden of showing that the answers are untrue is, of course, upon the company. The defendant claims that the untruth of certain of the answers has been shown by the evidence submitted to you. To the answers alleged to be untrue I will now direct your attention.

The tenth and eleventh questions addressed to Beckwith S. Brockway relate to his health; and he was asked whether he had had any of certain specified diseases or any sickness within the last 10 years. To the tenth question he answered: "Nothing but rheumatism, of a subacute type, at long intervals, and confined to the hands and finger joints." To the eleventh question he answered: "Rheumatism; nothing else." Upon the subject of his health, Brockway's "friend," Silas E. Walton, answered: "I have known him to have slight attacks of rheumatism." And the physician, Dr. R. H. Little, answered: "Has occasionally had attacks of subacute rheumatism, seldom requiring medical interference, and not confining him to the house."

These answers are alleged to be untrue. I cannot recall any evidence which shows that Beckwith S. Brockway was ever affected with any of the diseases inquired of other than rheumatism. Whether, as affecting the risk under the policy in suit, there is any essential difference between rheumatism of a subacute type, and rheumatism

of an inflammatory type, is a question to be settled upon medical testimony, and I am not persuaded that we have sufficient evidence here to solve that question. There is, perhaps, some evidence tending to show that on one occasion this disease affected his knee joints, or one of them. There is also evidence that on several occasions, when suffering from rheumatism, he was confined to the house; but it is by no means clear that this confinement occurred during the period of time covered by Dr. Little's answer. Upon the whole, I am not satisfied that there is sufficient evidence in the case to justify me in submitting to you the question, whether the answers touching the health of Brockway were untrue; and I therefore instruct you to disregard this particular defence, and to dismiss it altogether from your consideration.

The seventeenth question addressed to Beckwith S. Brockway, and his answer thereto, are as follows: *Question.* "Name and residence of the party's usual medical attendant, or of the medical attendant of his family, to be referred to for information as to his health." *Answer.* "R. H. Little, Berwick, Pennsylvania." This answer is alleged to be untrue. But I am of the opinion that the evidence upon this subject would not justify a verdict for the defendant, and I therefore instruct you to disregard and dismiss from your consideration this particular defence.

This brings us to a branch of the defence which deserves your most serious consideration. The thirteenth question propounded to Beckwith S. Brockway, and his answers thereto, are in these words: *Question.* "Is the party [Beckwith S. Brockway] sober and temperate?" *Answer.* "Yes." *Question.* "Has he always been so?" *Answer.* "Yes."

The defendant alleges that these answers are untrue, and a very large number of witnesses have been examined in your presence and hearing, and many depositions have been read on the part of the defendant, to show the untruthfulness of these answers in respect to Brockway's sobriety and temperance. On the other hand, the plaintiff has submitted a great deal of testimony, oral and by depositions, to rebut the defendant's evidence on this point, and to sustain the truth of these answers.

The question of fact is for your determination: Was Beckwith S. Brockway, on March 8, 1868, the date of his declaration and answers, a "sober and temperate man? and had he been always so?" This you should decide according to the weight of the evidence. You will observe that Brockway's answers had respect not only to the date thereof, March 8, 1868, but to his whole previous life. "Is the party

sober and temperate?" "Has he always been so?" If either answer was false there can be no recovery, and there ought not to be. The truth of these answers was relied on by the insurance company. Good faith required truthful answers in respect to so important a matter as the habits of the party applying for insurance touching the use of intoxicating drinks.

The words "sober and temperate" are to be taken in their ordinary sense. The language does not imply total abstinence from intoxicating liquors. The moderate, temperate use of intoxicating liquors is consistent with sobriety. But if a man use spirituous liquors to such an extent as to produce frequent intoxication, he is not sober and temperate within the meaning of this contract of insurance.

I have said that you should be governed, in respect to the matter under consideration, by the weight of evidence. And here you should distinguish between the positive and negative evidence. If a number of credible witnesses testify that they have frequently seen a party intoxicated, or visibly under the influence of strong drink, their testimony is not to be rejected simply because an equal number of like credible witnesses testify that they never saw the party in such a condition. The testimony in the one case is positive, in the other negative, and the testimony of both sets of witnesses in the case supposed may be true. Many of the witnesses on the part of the plaintiff say that they never saw Brockway so much under the influence of liquor that he could not attend to his ordinary business. This evidence, however, does not necessarily negative the immoderate use by him of spirituous liquors.

Again, some of the plaintiff's witnesses testify that Brockway's health was not impaired by his use of intoxicating liquors. But whether or not his health was impaired is altogether immaterial, if, in fact, he was immoderate or intemperate in his indulgence in spirituous liquors.

You are to say, upon the weight of the evidence, in view of the explanations and instructions I have given you, whether Beckwith S. Brockway was sober and temperate at the date of his answers, and had always been so. If you determine this question against the plaintiff that will end the case, and your verdict will be for the defendant. But if your finding on this part of the case should be in favor of the plaintiff, you will then pass to the consideration of another branch of the defence.

It is claimed that the policy in suit is what is known as a wagering policy, and therefore void. It is a general rule of law that no one can

procure valid insurance upon a life unless he has an interest in that life. I may insure my own life, for I have an interest in it. But an entire stranger to me, one who has no interest in my life as a creditor or otherwise, cannot take out a valid policy on it. Should he procure such policy the law would condemn it as a mere wager, a bet on my life, a gambling contract, and there could be no recovery thereon. This rule prevails, not in the interest of insurance companies, not out of regard to them. The rule has its foundation in good morals and sound public policy. It has been well said of such wager policies that, "if valid, they would not only afford facilities for a demoralizing system of gaming, but furnish strong temptation to the party interested to bring about, if possible, the event insured against." The annals of crime furnish more than one instance where murder has been perpetrated by the holders of such policies that they might reap the fruits of speculative insurance upon the life of their victim. If an entire stranger to me were permitted to take out insurance on my life, his sole interest, you must perceive, would be in my speedy death. The law, therefore, wisely takes from him the temptation to bring about the event by forbidding such contract. The evils of gambling in such policies are also apparent and great, and therefore the law will not sanction insurance obtained for the purpose of speculating upon the hazard of a life in which the assured has no interest.

In the present case, as I have heretofore said, the policy on its face appears to be taken out by Beckwith S. Brockway on his own account. But it is claimed it was not intended to be what it purports, but that form was adopted as a mere cover for a wager policy in favor of Daniel F. Seybert, the use plaintiff in this case.

It appears that Beckwith S. Brockway was a shoemaker, and there is evidence tending to show that he was without pecuniary means. When he died, on December 4, 1869, there was insurance on his life to the amount of $40,000, which, it is claimed, was out of all proportion to his station in life. There is evidence tending to show that all this insurance was taken by the procurement of Daniel F. Seybert, and for his benefit; that he (Seybert) paid all the premiums that were paid; that Seybert solicited Brockway to take out the policy in suit, and agreed to pay him $300 for so doing; that he did pay him $30 in cash, and gave him his two notes for $100 each.

The defendant claims that the evidence shows that the policy in suit was taken out nominally for Brockway, but actually for Seybert, as a mere matter of speculation upon the hazard of Brockway's life;

that it was not a policy upon the life of Brockway taken out in good faith, but a mere cover for a wager policy. If you so find, there can be no recovery upon the policy, and your verdict must be for the defendant.

A creditor, however, has an insurable interest in the life of his debtor, and may take out a policy upon the life of the latter, or the policy may be taken out in the name of the debtor and assigned to the creditor. It is claimed by Seybert that this is the character of the transaction under investigation. He produces, and has given in evidence, a note dated December 26, 1867, for $10,000, payable to him or his order one day after date, and purporting to be signed by Beckwith S. Brockway. He has also given in evidence an assignment dated March 30, 1868, from Brockway to him (Seybert) for $8,000 of the policy in suit. He claims, you perceive, to be the creditor of Brockway, and that he was such at the time this policy was taken out, and that it was procured on account of that indebtedness. If Brockway was indebted to Seybert, as claimed by him, in the sum of $10,000, and the policy was taken out with reference to that indebtedness, then it was not a wager policy, and this branch of the defence (if you so find the facts to be) would fail. Are you satisfied that there was such indebtedness? The note for $10,000, purporting to be signed by Brockway, is in evidence, but its genuineness is controverted. It is for you to determine, under all the evidence, whether or not the signature to the note is the genuine signature of Beckwith S. Brockway. But if you should find that it is his signature, the vital question still remains whether it represents a *bona fide* indebtedness. Did Brockway actually owe Seybert $10,000, or is this note but a part of the alleged confederacy between Brockway and Seybert, whereby the latter was to take out a merely speculative insurance upon the life of the former?

Upon this branch of the case Seybert relies upon the note itself, and has given no other evidence to show the alleged indebtedness, or how or when it originated. Mrs. Cooper testifies that she was present when the note was signed; but she is silent as to everything beyond the mere fact of the signing of the note by Brockway. In the absence of any testimony by Mrs. Cooper as to the payment of any money by Seybert to Brockway, or the passing of any consideration at the time the note was executed, it is reasonable to assume that no consideration then passed between the parties. I cannot recall any evidence whatever, aside from the note itself, tending to show the alleged indebtedness.

The defendant insists that, in view of Brockway's pecuniary circumstances and his station in life, it is highly improbable that he could be *bona fide* indebted to Seybert for so large an amount as $10,000. It is further urged that if any such indebtedness in fact existed, it was in the power of Daniel F. Seybert, the use party plaintiff, to show that indebtedness, to prove the consideration for which the note was given, and that the entire absence of such evidence raises a strong presumption against the *bona fides* of the note. It is for you to say what weight should be given to these considerations, which the defendant's counsel have pressed upon you.

The case, as submitted to the jury, turns upon the determination of two questions of fact. The one relates to the habits of Brockway in respect to sobriety; the other has regard to the character of the policy in suit.

(1) Was Beckwith S. Brockway, on March 8, 1868, "sober and temperate," and had he always been so?

(2) Was the policy in suit a *bona fide* risk upon the life of Brockway, or was it merely a speculative transaction on the part of Seybert—a wagering policy?

If you find both these questions of fact in favor of the plaintiff, your verdict will be for the plaintiff. But if your finding upon these questions of fact, or upon either of them, is against the plaintiff, your verdict must be for the defendant.— [*Ins. Law J.*