Upon these grounds we have concluded to affirm the judgment.

For reasons stated, it is therefore ordered, adjudged, and decreed that the judgment appealed from is hereby affirmed.

---

(45 South. 959.)

No. 16,715.

LAKE v. NEW YORK LIFE INS. CO. et al.

(Feb. 17, 1908. Rehearing Denied March 16, 1908.)

INSURANCE — INSURABLE INTEREST — DEBTOR AND CREDITOR.

An agreement entered into by a creditor and his debtor, by which the creditor agrees to make an additional loan, and the debtor agrees to take out life insurance on his own life and transfer it to the creditor in payment of the existing debt and of the loan, the creditor to pay all premiums, is valid, and, when carried out, makes the creditor the owner of the policy and entitled to receive the proceeds; provided the transaction be in good faith, and the value of the policy be not so disproportionate with the amount of the debt and loan as to constitute a mere wagering scheme.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 162.]

Breaux, C. J., dissenting.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by Mayme Lake against the New York Life Insurance Company and Jacob C. Simon. From the judgment, Simon appeals. Reversed and rendered.

Wise, Randolph & Rendall, for appellant. William Alexander Mabry, for appellee.

PROVOSTY, J. The defendant insurance company has deposited in court the proceeds of four insurance policies on the life of Elias Lake, to be litigated over by the plaintiff, Mrs. Mayme Lake, surviving widow of Elias Lake and administratrix of his succession, and Jacob C. Simon, the real defendant in the case, who was the assignee of the policies.

Plaintiff contends that the policies were assigned to Simon merely in pledge, and that the debt secured by the pledge was not as large as is pretended by Simon; and, in alternative, plaintiff contends that, if the assignment was an absolute transfer, it was null except to the extent that Simon was the creditor of her husband, and as such had an insurable interest in his life.

We experience no difficulty in finding, with the learned trial judge, that the assignment was intended to be absolute, and that the debt was as large as claimed by Simon. Lake and Simon were fellow clerks in the employ of Simon's brother-in-law. Lake had a family to support, and had no means outside of his

salary of $75 to $100 a month. Simon was a bachelor, living rent and board free at his sister's, and receiving an income of $300 a month from his salary and an investment of $20,000. The two were friends. Simon had at divers times made small loans to Lake, which, with capitalized interest, had grown at the time of the assignment to $2,834.20. The assignment came about in the following manner. Lake sought to borrow $1,000 more of Simon, and in applying for the loan informed him that his intention was to insure his life in favor of his wife for $1,000, and to take out at the same time $10,000 additional, and assign the latter to him in payment of the debt already due and of the additional loan applied for. This plan was carried out. Four policies of $2,500 each were taken out by Lake in the defendant company on his own life payable to his executors, administrators, and assigns, and a few days after their issuance were assigned over in full ownership to Simon, and Simon surrendered to Lake all the notes and duebills he held representing the old debt and representing $250, which he had in the meantime let him have out of the $1,000, and paid him the balance of the $1,000. Simon was to pay all the premiums, including the first.

Simon was not related to Lake by blood or marriage, and had no other insurable interest in his life than as creditor.

The law seems to be fairly settled that a life insurance policy is an incorporeal right, or chose in action, which may be sold, or given in payment of a debt; and that the transaction is not the less valid where the transferee is to pay all future premiums; not, at least, where the value of the policy, and the price of the sale, or amount of the debt, are not so disproportionate as to show that the transaction was nothing more than a mere wagering scheme. 25 Cyc. 709; Metropolitan Life Ins. Co. v. Elison, 72 Kan. 199, 83 Pac. 410, 3 L. R. A. (N. S.) 934, 115 Am. St. Rep. 189; Rylander v. Allen, 125 Ga. 206,

53 S. E. 1032, 6 L. R. A. (N. S.) 128; Alba v. Providence Life Assurance Society, 118 La. 1021, 43 South. 663.

Whether it makes any difference that the policy is taken out, as in this case, in pursuance of an agreement that it is to be transferred, and that the transferee is to pay the premiums from first to last, is really the only question in the case. We see no good reason why it should. Whether the policy be first taken out and then sold, or given in payment, or be taken out in pursuance of an agreement that such a use is to be made of it, the wagering element, which is the objectionable feature of such a transaction, is equally present. The taking out of life insurance with a view to its being used as collateral security is a common practice; now, if such insurance may be taken out for the purpose of being pledged, why not for the purpose of being given in payment? The insurable interest which supports the transaction in the one case is equally present in the other.

Doubtless such a transaction lends itself more readily to fraud, and for that reason may have to be scrutinized more closely by the courts; but that is an objection which addresses itself to the facts and not to the law—to the transaction in the concrete, not in the abstract. In the case at bar, the transaction was characterized by the most perfect good faith. Lake was 33 years old and his expectancy of life was 33 years and some months. Had he lived out his full quota, the yearly premium of $281, would, with interest, have exceeded the $10,000, so that Simon would have paid out in premiums more than the amount of the policy, and would in addition have lost his large debt and his $1,000 loan. By the transaction, Lake paid his heavy debt and got $1,000 additional. At Lake's death, six years and four months after the issuance of the policies, Simon had already paid $2,254.40 in premiums.

It is ordered, adjudged, and decreed that the judgment appealed from be set aside, and

that the defendant, Jacob C. Simon, have judgment decreeing him to be entitled to receive the fund deposited in court by the defendant company, and ordering said money to be paid over to him; and that plaintiff pay the costs of this suit.

BREAUX, C. J., dissents.