## Equitable Life Assurance Society v. O'Connor's Administrator.

(Decided January 21, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Number Four).

1. Insurance—Insurable Interest—What Constitutes Interest in Human Life.—The relationship of uncle and nephew or niece is not of itself sufficient to constitute an insurable interest upon the part of either in the life of the other where there is no reasonable ground of expectation of support to be furnished by the assured to the other.

2.  Insurance—Insurable Interest—Wagering Policies in General.—
    Where the assignment of a policy of insurance was contemplated
    at the time it was procured to be issued, the first and all subse-
    quent premiums to be paid by the assignee, and he to receive
    the proceeds of the policy, and the assignee lacks insurable inter-
    est in the life of the insured, the assignment is void, barring
    recovery by the assignee from the insurer; and the policy itself
    is void, preventing a recovery by the personal representative of
    the insured, from the insurer.  Such an arrangement is a mere
    colorable evasion of the prohibition against wagering contracts,
    violative of a sound public policy, and unenforceable in the
    courts.

HUMPHREY, MIDDLETON & HUMPHREY for appellant.

DAVID R. CASTLEMAN and PRYOR & CASTLEMAN for ap-
pellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

In 1904 Mary O'Connor, at the solicitation of her
uncle, John O'Connor, procured a policy of insurance
on the life of John O'Connor to be issued by the Equita-
ble Life Assurance Society.  Her parents were dead; but
she was not only self-supporting, but was also earning
sufficient to make some provision for her future; and an
investment in the form of a policy of life insurance upon
her uncle's life was recommended to and urged upon her
by him, as a safe way of accumulating her surplus earn-
ings.

It was arranged between them that she was to pay
the first and all succeeding premiums on the policy and
was to have the entire proceeds thereof at O'Connor's
death.  The policy was issued payable to the estate of
the insured, and a few days thereafter he assigned it to
Mary O'Connor.  She continued to pay the premiums
thereon until 1912, when O'Connor died.

Upon his death she made proof of claim and applied
to the assurance society for payment of the policy.  The
society paid to her $497.15, the total of the premiums
she had paid, but declined to pay the face of the policy
upon the ground that she had no insurable interest in
the life of her uncle, and that the policy was, therefore,
void.

John O'Connor's administrator brought this action in
the Jefferson Circuit Court against the assurance society
to recover the amount of the policy, upon the theory that
the policy itself was valid, but that the assignment

thereof to Mary O'Connor was invalid.    There was a
verdict and judgment in favor of plaintiff in the sum of
$502.85, being the amount of the policy, one thousand
dollars, less $497.15, the total of the premiums paid by
Mary O'Connor and restored to her by the insurer.
The defendant appeals.

1. The relationship of uncle and nephew or uncle
and niece is not in itself sufficient to constitute an in-
surable interest upon the part of either in the life of the
other, where there is no reasonable ground of expecta-
tion of support to be furnished by the assured to the
other. Hess' Admr. v. Segenfelter, 127 Ky., 348, 105
S. W., 476, 32 R., 225, 128 A. S. R., 343, 14 L. R. A.
(n. s.), 1172; Woods v. Woods, 130 Ky., 162, 113 S. W.,
79, 19 L. R. A. (n. s.), 233; Metropolitan Ins. Co. v.
Elison, 72 Kan., 199, 115 A. S. R., 189, 7 Ann Cas. 909,
3 L. R. A. (n. s.), 934.  Mary O'Connor, therefore, had no
insurable interest in the life of her uncle, John O'Connor.

2. It is also well settled that where the assignment
of the policy was contemplated at the time it was pro-
cured to be issued, the first and all subsequent premiums
to be paid by the assignee, and he to receive the entire
proceeds of the policy, the assignment is void as be-
tween the insurer and the assignee, where the latter
lacks insurable interest in the life of the insured.  Stein-
back v. Diepenbrock, 158 N. Y., 24, 44 L. R. A., 417, 70
A. S. R., 424, 52 N. E., 662; Powell v. Dewey, 123 N. C.,
103, 68 A. S. R., 818; Keystone v. Morris, 115 Pa., 46,
2 A. S. R., 572; Brockway v. Mutual Life, 9 Fed., 249;
Hinton v. Mutual Reserve, 135 N. C., 314, 65 L. R. A.,
161, 102 A. S. R., 545; Metropolitan Ins. Co. v. Elison,
supra.

3. But this contest is between the personal repre-
sentative of the insured and the insurer, and not be-
tween the assignee and the insurer.

The authorities are in conflict as to whether the pol-
icy itself is invalid, so as to prevent a recovery thereon
by the personal representative of the insured, where the
assignment of the insurance contract was contemplated
at the time it was procured to be issued, and where the
assignee, having no insurable interest, is to pay the first
and all subsequent premiums and to receive the proceeds
of the policy.

But this court has adopted the rule that in such case
the policy, although in form originally issued to the in-

sured, having been in fact procured for the benefit of one having no insurable interest, is therefore invalid from its inception; such assignment of the policy being a mere colorable evasion of the prohibition against wagering contracts.

The rule that in such case the policy itself is invalid was announced by this court in Bromley's Admr. v. Washington Life Insurance Company, 122 Ky., 402, 92 S. W., 17, 121 A. S. R., 467, 12 Ann Cas. 685, 5 L. R. A. (n. s.), 747.

In that case, Bromley made an arrangement with one Bates whereby the latter was to pay the former $75.00 and they were to obtain insurance policies on Bromley's life, payable to his estate, which policies Bromley was to assign to Bates, he to pay the first and all subsequent premiums, and to have the proceeds of the policies; Bates having no insurable interest in Bromley's life.

The court in that case quoted from Steinback v. Diepenbrock, *supra*, the following language: "The intention of the parties procuring the policy would determine its character, which the courts would unhesitatingly declare in accordance with the facts, reading the policy and the assignment together as forming part of one transaction."

The court then said that if the policies in question had been made payable directly to Bates they would have been void, because he had no insurable interest in Bromley's life; and the issual of the policies payable to Bromley and assignment by him to Bates being a mere evasion of the prohibition against wagering contracts, could not operate to validate that which was invalid.

In the Bromley case the court said:

"It is conceded that if the policies under this arrangement had been made payable to Bates, they would have been void, as he had no insurable interest in the life of Bromley. But it is insisted that as they were made payable to Bromley's estate and were assigned by him to Bates, only the assignment is void and that his administrator should recover from the insurance company. There would be force in this if the policies had been delivered to Bromley and the assignment to Bates had been a subsequent and independent transaction. But the proof leaves no doubt that Bromley did not contemplate insuring his life for the benefit of his

estate at any time. He contemplated simply getting $75.00 out of the arrangement.''

There is some proof in this record that O'Connor had the policy in his own possession for a short time before it was assigned to Mary, his niece; and appellee administrator lays great stress upon this, contending that this case is thereby taken out of the rule announced in the Bromley case. The evidence of Mary O'Connor and the agent who delivered the policy is that the policy was delivered to Mary by the agent when she paid the first premium, and this evidence is uncontradicted. But the matter of delivery of the policy is immaterial. The material thing was that O'Connor, like Bromley, never had any purpose to insure his life for the benefit of his estate; and the assignment of the policy by him to his niece was not an independent transaction originating and executed after the insured had taken out a policy on his life, payable to his estate, in good faith, for the benefit of his estate. That assignment was made by him pursuant to the arrangement contemplated at the time the policy was procured to be issued, and constituted an evasion of the prohibition against the taking of insurance by persons having no insurable interest in the life of the insured.

Such transactions are obnoxious to the law, and violative of a sound public policy; invalid in their inception, and unenforceable in the courts. Metropolitan Ins. Co. v. Elison, *supra*. O'Connor's administrator, therefore, was not entitled to recover any amount upon the policy in question.

Judgment reversed.