## O'Connor's Administrator v. Equitable Life Assurance Society of the United States.

(Decided June 9, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

Insurance—Life Insurance—Beneficiaries—Insurable Interest.—A policy of insurance invalid at the time it was issued because the beneficiary had no insurable interest in the life of the insured, cannot thereafter be made valid by an agreement between the beneficiary and the insured to which the company is not a party.

DAVID R. CASTLEMAN and PRYOR & CASTLEMAN for appellant.

HUMPHREY, MIDDLETON & HUMPHREY for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

This is an action by John O'Connor's administrator, against the appellee, on a policy of insurance issued to him in 1904. On the first trial a verdict was returned for the plaintiff, upon which judgment was entered.

On appeal from that judgment this court held that there could be no recovery by the administrator because although the policy had been originally issued to John O'Connor, it was shortly thereafter assigned to Mary O'Connor, pursuant to an arrangement entered into at the time the policy was procured, and was really an evasion of the prohibition against the taking out of in-

surance by persons having no insurable interest in the life of the insured, and said that there should have been a directed verdict for the defendant. 162 Ky. 262.

Upon the return of the case another trial was had and the lower court conforming to the opinion of this court, peremptorily directed the jury to find for the defendant, and from the judgment on that verdict the plaintiff now appeals.

On the last trial no new witnesses were introduced, but it is contended for the plaintiff that one of the daughters of John O'Connor gave new and additional evidence which authorized the submission to the jury of the question whether or not the policy was in fact originally procured and issued for the sole benefit of Mary O'Connor, to whom it had been assigned shortly after its date, or whether it had been, in fact, issued for the joint use and benefit of John O'Connor and Mary O'Connor.

On the first trial, as recited in the former opinion, the evidence showed conclusively that from the very inception of the matter it was contemplated that the policy should be for the sole benefit of Mary O'Connor, the niece of John O'Connor, who had no insurable interest in his life; that she paid the first and all subsequent premiums and had been induced to enter into the arrangement by the representation that it would be a safe way for her to save her money; that although the policy was at first issued to John O'Connor, it was shortly thereafter, according to previous arrangement, assigned by him to Mary O'Connor and had been, at all times, really for her benefit.

On the first trial Nellie O'Connor, the daughter of John O'Connor, testified, but made no statement with reference to any conversations heard by her between John O'Connor and Mary O'Connor as to how the proceeds of the policy were to be applied; but on the last trial the same witness undertakes to give the substance of conversations heard by her between John O'Connor and Mary O'Connor wherein John said to Mary, in substance, that she, Mary, would get her money and interest on it back and the balance could be used for the payment of his funeral expenses and little debts. But, the witness does not undertake to give the date of these conversations, and a careful reading of her evidence is convincing that she refers to a date at which said con-

versations occurred long subsequent to the issual of the policy and that they do not refer to any conversations between Mary and John O'Connor had prior to or at the time of the issual of the policy.

Manifestly, any arrangement which might have been made between John and Mary O'Connor after the policy had been issued for the sole benefit of Mary O'Connor in the first place, can not affect the validity of the policy at the time of its issual. Whether John O'Connor or his estate could recover on the policy depended wholly upon whether or not it was originally issued in truth and in fact, either wholly or partly, for his benefit, and on this question, as pointed out in the original opinion in this case, there was no contrariety of evidence.

Not only so, but the evidence of Nellie O'Connor on the last trial, shows that in the conversations detailed by her, John O'Connor claimed that the policy was partly for his benefit, but she expressly says that Mary O'Connor did not assent to his statements.

The validity of the policy must be determined from the contract between the parties prior to and at the time of its issual and any subsequent attempt by Mary and John O'Connor to modify the original agreement between them can not affect the rights of the company. The lower court properly directed a verdict for the company and the judgment is affirmed.