## GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. B. F. GARRETT.

### Decided December 5, 1906.

**1.—Peremptory Charge—When Properly Refused.**

Unless it appeared as matter of law that the defendant railroad company was guilty of none of the acts of negligence charged to have been the cause of plaintiff's injuries a peremptory charge should have been refused. Facts considered, and held to have required the submission to the jury of the issue of negligence *vel non*.

**2.—Construction of Roadbed—Changed Conditions—Culverts.**

Though the construction of a railroad track or embankment may have been originally proper, still if changes occur in the surface of the adjacent ground making it necessary to construct other openings or culverts in the roadbed, it is the duty of the company to meet such changed conditions, and a failure to perform this duty is negligence.

**3.—Duty of Master—Washouts—Inspection.**

It is not only the duty of the master to use ordinary care to provide a reasonably safe place for his servants to do their work, but in order that danger from defects that may afterwards arise may be obviated he must make such examination or inspection as a person of ordinary prudence would have made under the circumstances; and a failure on the part of a railroad company to cause its section men to go over their section during a rain, alleged by it to be unprecedented, is negligence.

**4.—Extent of Injury—Amount of Damages—Question for Jury.**

Evidence considered, and held that a verdict for $15,000 did not manifest prejudice or improper motives on the part of the jury, and sufficient to support the verdict.

**5.—Mental Suffering—Damages—Proof.**

Where physical injury is shown, the jury may infer mental suffering without direct proof thereof.

**6.—Rule of Company—Pleading—Evidence.**

A rule of a railroad company, when offered for the purpose of showing negligence on the part of such company, is admissible in evidence without being pleaded.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*Baker, Botts, Parker & Garwood, Newton & Ward* and *W. B. Teagarden,* for appellant.

*Perry J. Lewis* and *H. C. Carter,* for appellee.

NEILL, Associate Justice.—This is an appeal from a judgment of $15,000 damages for personal injuries inflicted on the appellee through appellant's negligence.

As the three first assignments of error require consideration of the evidence our determination of them will constitute our conclusions of fact.

On the morning of July 5, 1903, while appellee was a fireman on one of appellant's trains and in the discharge of the duties of his employment, the train was wrecked between Seguin and Kingsbury by reason of a washout, and the tender fell upon appellee and injured him in the manner hereinafter stated.

After the evidence was introduced the appellant's counsel requested the court to peremptorily instruct the jury to return a verdict in its favor. The refusal of the request is the subject of the first assignment of error.

In view of the numerous decisions upon the subject, it is hardly necessary to say that unless it appeared as a matter of law that appellant was guilty of none of the acts of negligence charged to have been the cause of appellee's injuries the requested charge was properly refused. To determine this question we must ascertain as best we can in the light of the evidence, and our knowledge of conclusions formed by ordinary men—not of those who by position, or, perhaps, by natural endowment have been raised above their ken, but the common, practical, everyday men, who do the world's work, control the affairs of men, and are constantly pushing or dragging this world of man to a higher civilization—whether any other conclusion can be reached by ordinary men than that no act of negligence charged by appellee against appellant has been shown. For, if this is the only conclusion that can be deduced the charge should have been given, but if ordinary men might reach different conclusions, the requested instruction was properly refused. A jury of twelve men and the trial judge have arrived at and registered by the verdict and judgment the conclusion that the appellant was guilty of some one or more of the acts of negligence alleged against it, and that such negligence was the proximate cause of appellee's injuries. Whatever may be said of a judge, it is safe to say that a jury is always made up of ordinary men. This ought to settle the question, for they have reached a different conclusion from that contended for by appellant's counsel. If counsel are on a plane that raises them above the level of ordinary men, the fact that they have reached a different conclusion can not set at naught the conclusion of the ordinary men who composed the jury. The conclusion of ordinary men is the *criterion* by which the question must be determined, and if they are not ordinary men their conclusion is worthless; if they are, their conclusion being different from that of the jury, demonstrates that the question was one of fact for the jury and not of law for the court to determine.

This pre-supposes there was evidence upon the issue; for there can be no trial of an issue of fact, or conclusion upon it, without evidence. That there was evidence, is manifested by the voluminous recitation in appellant's brief of the testimony. It raises more than a suspicion of negligence, else it would not be admitted by appellant that a presumption of negligence was created from proof of the existence of the defect in

the track which caused the wreck. This of itself required the submission of the case to the jury; for the rule is that whenever a party introduces sufficient evidence to support a verdict in his favor he is entitled to a submission of the case to the jury, no matter how strong the contradictory evidence may be. Eastham v. Hunter, 86 S. W. Rep., 324; Texas & P. Ry. Co. v. Bump, 95 S. W. Rep., 29.)

But, waiving for the present such admission of appellant's counsel, we will state the issuable grounds of negligence alleged and, to some extent, the evidence bearing upon each of them; and then, viewing it in the light most favorable to appellee, determine whether the court erred in refusing the requested peremptory instruction.

Among other things, the appellee's petition charged that defendant's track was defective; that the defendant failed to use the proper care to discover the defect; that it negligently ran its train upon the defective track, without using proper precaution to ascertain its condition, at an excessive rate of speed, and that these acts of negligence produced the derailment and plaintiff's injuries.

As is said before, the appellee was the fireman of an engine on one of appellant's trains and was injured by its derailment, which was caused by a washout, or the giving way of the road-bed by reason of heavy rainfalls. This was, of course, a defect in the track, rendering it unsafe for the operation of trains. The question then is, was the defect caused by appellant's negligence? As there can be no negligence unless there is a failure of duty, it is essential to the decision of the question to determine the duty appellant owed the appellee, and whether it was discharged. That a railway company owes to its employes operating its engines and trains over its road the duty to exercise ordinary care to so construct and maintain its roadbed as to make it a reasonably safe place for such servants to do their work, and that its failure in such duty to its employes is negligence, are matters of law too well settled to admit of question. If then, there was evidence tending to show a breach of this duty, it is equally clear that a question of fact was presented for the determination of the jury.

The evidence shows that the train was running on a bank or dump about twelve feet high, the ground upon which it was built was much lower on the north side of the track than on the south side, which was caused from continual filling on the south from the wash from an adjoining farm, otherwise the ground was much higher on that side. There was no culvert under the track through which storm water flowing from the hillside south of the track could be carried off. This may account for the alluvium which raised the ground much higher on that side of the track than it was on the other. It was a complete washout, from six to fourteen feet long and eight feet to twelve feet deep, and a heavy stream was running through it. The earth was washed out underneath the dump. "Apparently," says a witness, "the water that ran through the washout came from the farm on the south side of the track, and a great deal came down the right of way from the east. . . . To the best of my knowledge it seemed to me there was pretty much of a body of quicksand in there somewhere the way it had washed out, from the amount on the side, I don't know where it came from. Can't say

whether the quicksand came out of the dump no not—it looked that way. The ground was thoroughly water-soaked, very wet."

While the evidence shows that the rain which caused the washout was a heavy one, it was not unprecedented. Though the road had been constructed over twenty years prior to that time no washout had ever occurred there before. If conditions had remained unchanged from the time of its original construction this would be regarded as cogent evidence that there was no negligence in its original construction. But conditions are not shown to have remained what they were. The topography of the land adjacent the track, from the way it was constructed, had changed by accretions of alluvia washed from the hillside against the embankment so that the water flowing from the east and down the hill from the south could not flow along the side of the dump and find an outlet through the trestle the distance of "five or six telegraph poles west of there" as it could when the road was constructed. It may be that this change of topography might reasonably have been foreseen and provided against by constructing a culvert in the proper place when the road was built. But whether it could have been foreseen and obviated originally, the changed condition brought about by the construction of the road was visible, and it can not be said from the evidence that ordinary care did not require the appellant to either maintain a ditch along the side of the track sufficient to drain the water westward to the trestle where it could escape, or construct a culvert for its drainage. (Labatt's Master & Servant, sec. 68c.) One can not wait until a catastrophe occurs, and excuse himself from its consequences, if the conditions which produced it were known or could reasonably have been foreseen and provided against by the exercise of the proper care, by proving that such an accident never occurred before. We, therefore, conclude that the defect in the track which caused the wreck arose from appellant's negligence and was the proximate cause of appellee's injuries.

If, however, it should be conceded that the defect in the track was not on account of appellant's negligence, we have the question—Did appellant use proper care to discover the defect?

It is not only the duty of the master to use ordinary care to provide a reasonably safe place for his servants to do their work, but in order that danger from defects which may afterwards arise may be obviated he must make such examination or inspection as a person of ordinary prudence would have made under the circumstances. It is usually for the jury to say whether the evidence tends to show an omission of this duty.

The circumstances which must be looked to for the purpose of ascertaining whether the evidence tends to show the lack of a proper inspection of the track, briefly stated, are these: The train left San Antonio, during a heavy rain, between nine and eleven o'clock at night; it had been raining through the day, and it continued to rain without cessation through the night until about one fifty o'clock in the morning when the accident occurred. The trainmen of this and a passenger train which preceded it a few hours, were cautioned from the office to run carefully and to look out for washouts and dangerous places along the track. This tends to show that, from the nature and character of the rain-

fall, danger from an unsafe track caused by the rain was apprehended. To obviate dangers of this kind appellant promulgated a rule which is as follows: "During heavy storms, whether by day or night, whereby the track or any portion of the company's property becomes liable to sudden damage, foremen and trackmen must be on duty, and at such times they are required to go over their section to make sure the track is safe, taking danger signals with them; the points most liable to damage must be first visited." Thus showing that during rain storms, such as the one prevailing on the night of the accident, the company realized the necessity of an inspection of its road in order that it might be *made sure* that the track was safe. Its section gang was quartered at Kingsbury about two miles from where the accident occurred. None of its members was sent out over the track to ascertain whether it was safe. Immediately after the accident its foreman and members were found at Kingsbury sound asleep, though the rain was such as to be pronounced by appellant's pleadings, "unprecedented." Yet because the passenger train passed safely over the track a few hours before without discovering or reporting the washout which wrecked this train, it is contended that further inspection was unnecessary, or would not have disclosed the defect. These were matters for the jury to determine (See Gulf, C. & S. F. Ry. Co. v. Boyce, 87 S. W. Rep., 395); and it seems to us that it was warranted in finding from these facts that the appellant failed to use the proper care to discover the defective condition of the track; and, in such failure, was guilty of negligence which proximately contributed to appellee's injury.

But there is another question raised by the evidence and pleadings. Did appellant negligently run its train over the defective track, without using proper precaution to ascertain its condition, at an excessive rate of speed? The evidence tends to show that on account of the rain the light of the head-light was so blurred the engineer could not have discovered the washout in time to avert the catastrophe. This would be more satisfactory had he discovered it at all before running his engine over the washed-out track; for considering the length of the wash-out it does seem that it should have been detected before passing over it, by the engineer, had he been engaged in keeping a proper lookout. Upon the same night, during the same rain, the engineer of the passenger train that preceded this one could see one hundred yards ahead of his engine; and it might have been thought by the jury that if the engineer had run cautiously and kept a proper lookout that he could have at least discovered the defect in time to have stopped the engine before running over it. The jury also may have found from the evidence that the train was run at a dangerous rate of speed. For the engineer testified that he thought he used more speed at that time than anywhere else along the route. Besides, the character of the wreck strongly tends to show, it being a light train, that its momentum was very great. At any rate, the question presented was one for the jury to determine, and we are without authority to disturb its finding. We conclude, therefore, that the court did not err in refusing the peremptory instruction requested by appellant.

The second assignment of error, which complains of the court's overruling appellant's motion for a new trial and in refusing to set aside

the verdict and judgment because against the law and overwhelming weight of evidence, has in effect been disposed of by what we have said in considering the preceding assignment.

It is contended by the third assignment of error that the verdict is so grossly excessive that it manifests passion, prejudice and improper motives on the part of the jury. This proposition: "In this case the undisputed facts stated by the witnesses as well as the physical facts apparent at the time, show conclusively that appellee did not sustain any serious injury. He was thereafter under the treatment and observation of skilled surgeons for several months and they could discover nothing but temporary injuries, and they say that he soon recovered from these, and from all the facts it is made palpably plain that appellant was at the time of the trial feigning the alleged present disabilities or else they resulted from other causes than the accident, and it is therefore palpably plain that the verdict is not only outrageously excessive but that the jury was actuated by prejudice or other improper motives," is asserted under the assignment.

After carefully examining and maturely considering the evidence we have been unable to reach the conclusion advanced by appellant under the assignment,

The evidence shows that after the wreck appellant was found pinioned under the tender, about one-half of his body and right leg being under it; and that it took the men about three-quarters of an hour to extricate him; he was bruised nearly all over—his foot mashed, his hand, leg and side cut, his head bruised and back injured. He was placed by appellant in the Santa Rosa hospital, where he remained under the treatment of its surgeon six months. While the testimony of appellant's expert witnesses tends to show that he has recovered from his injuries, the same character of testimony, on the other hand, tends with equal if not with greater weight to prove that his spinal cord is injured, and that such injury will gradually grow worse and probably cause paralysis and culminate in his death. He was twenty-one years old, stout, healthy and vigorous, weighing 175 pounds and earning from $85 to $105 per month when injured. Now he weighs only 139 pounds, is too weak to work, suffers constant pain in the back, is weak in the back and one of his legs. In view of such testimony it can not be said that a verdict for $15,000 manifests prejudice or improper motives on the part of the jury who rendered it; nor that it exceeds just compensation for the damages he has sustained.

Under the fourth assignment of error, which complains of the fourth paragraph of the court's charge, it is contended that the evidence did not authorize the submission of the question whether appellee was entitled to recover for mental pain. It is settled law in this State that where physical injury to a plaintiff is shown, the jury may infer mental suffering without direct proof thereof. Houston E. & W. T. Ry. v. Simpson, 81 H. W. Rep., 353; Brown v. Sullivan, 71 Texas, 470; Galveston H. & S. A. Ry. v. Rubio, 65 S. W. Rep, 1127; International & G. N. Ry. v. Johnson, 95 S. W. Rep., 595.

There can be no error, of which appellant can justly complain, in this part of the charge: "If you believe from the evidence that the said track and roadbed was in a washed-out and defective and dangerous

condition, yet if you also believe that the said condition was caused by an unprecedented rainfall, which could not reasonably have been anticipated by defendant, or, if you believe from the evidence that the defendant was not guilty of negligence in failing to discover the said defective and dangerous condition of said track, if you find it was in such condition, in time to have prevented said wreck and derailment, then your verdict should be for the defendant," which is the subject of the fifth assignment of error. If obnoxious to the criticism of appellant's counsel, the error is not affirmative, and a special charge to cure the supposed defect should have been requested. Hill v. Gulf, C. & S. F. Ry., 95 Texas, 629, 69 S. W. Rep., 136; Ratteree v. Galveston, H. & S. A. Ry. Co., 81 S. W. Rep., 566; International & G. N. Ry. Co. v. Vanlandingham, 85 S. W. Rep., 849; Crowder v. St. Louis S. W. Ry. Co., 87 S. W. Rep., 166; McDonald v. Nalle, 91 S. W. Rep., 632; Galveston H. & S. A. Ry. Co. v. Mohrmann, 93 S. W. Rep., 1091.

Rule No. 331 of appellant company, the introduction of which in evidence is complained of in the sixth assignment, was admissible as evidence tending to show negligence without being pleaded, as was held by this court in Gulf C. & S. F. Ry. Co. v. Boyce, 87 S. W. Rep., 395. This also disposes of the seventh and eighth assignments of error which complain of the admission in evidence over defendant's objection of other like rules of the company.

There is no error assigned requiring a reversal of the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.