MUTUAL RESERVE LIFE INSURANCE COMPANY v. LINNIE JAY.

Decided April 8, 1908.

1.—Life Insurance—Application for—Contemporaneous Declarations.

In a suit upon a policy of life insurance the declarations of the father of the applicant for insurance, made at the time the application is being prepared, and in answer to a question by the medical examiner of the insurance company, as to the time and place of birth of the applicant, are competent testimony (the father being dead), and not subject to the objection that they were declarations *post litem motam.*

2.—Testimony—Contradiction—Effect.

The testimony of a witness is not rendered inadmissible because in conflict with the testimony of another witness. Such fact only affects its weight.

3.—"Preponderance of Evidence"—Definition.

The definition in a charge of the phrase "preponderance of the evidence," as "the greater weight of the evidence," is correct.

4.—Insurance—Verdict—Judgment—Interest.

Where, in a suit upon a life insurance policy, a verdict is rendered for the amount of the policy and for the statutory twelve percent damages, it is proper that the entire judgment should bear interest from date.

Appeal from the District Court of La Salle County. Tried below before Hon. J. F. Mullally.

*West, Chapman & West* and *Theodore Mack*, for appellant.—That the testimony of the witness, Dr. Williams, was incompetent, cited: Byers v. Wallace, 87 Texas, 503, 516 et seq.; Kirby v. Boaz, 91 S. W., 642; Schott v. Pellerim, 43 S. W., 944; Turner v. Sealock, 21 Texas Civ. App., 594; Emerson v. White, 29 N. H., 491; Davis v. Sittig, 14 Am. Dec., 180; Whitelocke v. Baker, 13 Ves., 514; Berkeley Peerage case, 4 Camp., 406, 409, 420; Monkton v. Atty. General, 2 Russ. & M. 160; 2 Wigmore on Evidence, secs. 1482, 1483, 1484.

The testimony of the witness Williams as to the declarations of the father of insured concerning his age, should have been excluded, as being hearsay, because such evidence is admissible only as secondary evidence where there are no persons alive or within reach of process by whom the age of insured can be established. In the case at bar the elder sister of insured was a witness at the trial. Hence the error of the court in not excluding the testimony of Williams. Campbell v. Wilson, 23 Texas, 253; Smith v. Geer, 10 Texas Civ. App., 252; People v. Mayne, (Calif.), 50 Pac., 656; I Phil. Ev., 216, 231, note 2.

*W. A. H. Miller* and *Hicks & Hicks*, for appellee.—Declarations of a father as to the date of the birth of his son, such declarations having been made ante litem motam, the declarant being dead at the time such testimony was offered, is admissible in evidence, even though living members of the same family can be examined on the same question. Rogers v. DeBardeleben Coal Co., 97 Ala., 154; Hodges v. Hodges, 106 N. C., 374; 11 S. E., 364; People v. Mayne, 118 Cal., 519; 62 Am. St., 256; Mason v. Fuller, 45 Vt., 29; Harland v. Eastman, 107 Ill., 535; Northrop v. Hale, 76 Me., 306; 49 Am. Rep., 613; Mooers v. Bunker, 29 N. H., 420; Carskadden v. Poorman, 10 Watts, (Pa.), 82; 36 Am. Dec., 145; Pendrell v. Pendrell, 2 Stra., 924; 1 Elliott on Evid., sec. 365; Mutual Reserve Life Ins. Co. v. Jay, 101 S. W., 545, and cases cited.

Where a statutes provides that in all cases where a loss occurs and the life insurance company liable therefor shall fail to pay the amount thereof within the time specified in the policy after demand therefor, such company shall be liable to pay the holder of such policy in addition to the amount of loss, twelve percent damages on the amount of such loss, such statute enters into and forms a part of every such contract as much as if incorporated therein, and such contract is presumed to have been made in reference thereto, and where it is expressly stated that the percent named should be recoverable as damages, the amount so stated will be regarded by the courts as liquidated damages and not a penalty. Tobler v. Austin, 22 Texas Civ. App., 100; Bessling v. Hoyle, 1 Texas Civ. App., 117; Watkins v. Morley, 2 Texas Civ. App., 639; Riggins v. Hinchman, 3 Texas Civ. App., 51; Talkin v. Anderson, 19 S. W., 852; Yetter v. Hudson, 57 Texas, 613; Union Central Ins. Co. v. Chowning, 86 Texas, 654; Emmitt v. Brophy, 42 Oh. St., 82; 1 Joyce on Ins., sec. 194, and cases cited; 3 Elliott on Evidence, sec. 2000, and over eighty cases there cited.

NEILL, ASSOCIATE JUSTICE.—This is the second appeal from a

judgment in favor of Mrs. Jay upon an insurance policy issued by the Mutual Reserve Fund Life Association, to whose rights, liabilities, and obligations the appellant succeeded, to her upon the life of her husband, George W. Jay. The opinion delivered on the first appeal is reported in 101 S. W., 545; which contains a full statement of the nature of the case and the pleadings of the respective parties. As no pleadings have been filed by either of the parties since the date of that opinion, reference is made to it for a statement of the pleadings upon which the case was tried when the judgment now appealed from was rendered. This judgment is upon a verdict in favor of appellee for $2000, the amount of the policy, with interest thereon, amounting to $418.67, statutory damages in the sum of $240, and $500 attorneys' fees, aggregating $3,158.67.

*Conclusions of Fact.*—As stated in our original opinion, the only issue of fact in the case is whether the statements in the application for the policy by deceased that he was born in "Owensville, Robertson County, Texas, 1st day Jan., year 1864, and his age at nearest birthday is stated to be 32," were true. There was evidence upon this issue which tends to support the verdict, and, it being an issue of fact for the jury to determine, we find in accordance with the verdict.

*Conclusions of Law.*—The first and second assignments of error are as follows:
"1. The court erred as shown by this defendant's bill of exceptions No. 1."
"2. The court erred as shown by this defendant's bill of exceptions No. 2."
To make these assignments intelligible the bills of exceptions referred to must be read in connection with them. They are as follows:
"Plaintiff offered in evidence the deposition of Dr. J. M. Williams, whereupon the defendant excepted to that part of the answer of said witness detailing a conversation with the father of George W. Jay, the assured, at the time the said Geo. W. Jay signed the application for the policy of insurance herein sued on, and to the declarations of the father of the said Geo. W. Jay as to the place and date of birth of his son George W. Jay, as given by said witness, Dr. J. M. Williams, for the reason that such evidence was hearsay, it appearing from the testimony of the said witness, Dr. J. M. Williams, that at the time the father of Geo. W. Jay, made such declarations he, the father, was informed and notified that his son, George W. Jay, was making an application for a policy of insurance and that it was necessary to insert in such application the place and date of the birth of said son, Geo. W. Jay, and that such statement was important, and therefore, the declaration of the father of said George W. Jay, made with such notice and under the cirumstances then surrounding them, as to the age and date of the birth of his son, George W. Jay, was not the natural and unsolicited effusion of one speaking upon occasion when his mind stood in an even position, without any temptation to exceed or fall short of the truth, and for

the reason that such declaration was not made *ante litem motam,* but at a time, as shown by the testimony of said witness, when a controversy existed capable of being litigated and of a nature likely to bias the mind of the declarant, the father of said George W. Jay; which objection was overruled by the court and the evidence permitted to go to the jury. To which action of the court in overruling its objection to such testimony defendant in open court excepted, tenders this its bill of exceptions and prays that the same may be examined, signed and approved by the court and ordered filed as a part of the record in this cause."

"After the plaintiff had read to the jury the deposition of Dr. J. M. Williams, the defendant moved to strike out and withdraw from the jury all that part of the testimony of said witness which gave the declarations of the father of George W. Jay as to the date and the place of birth of the said George W. Jay, which said date and place was inserted in the application of said George W. Jay for the policy of insurance herein sued on, for the reason that such evidence was hearsay, the said witness, Dr. J. M. Williams, having testified that the father of George W. Jay was notified and informed by the witness at the time he, the father, made such declaration and statement, that it was wanted for the purpose of inserting it in an application that his son, George W. Jay, was at that time making for an insurance policy on his life, such declaration having been made at a time and under such circumstances as did not leave the declarant free from all bias, but being made upon a question which he was then notified and informed might be a subject of controversy and which is the sole controversy in this suit, the only defense relied and insisted upon in this case being that the declaration made by the father and George W. Jay as to the date and place of birth of his son, George W. Jay, was and is untrue, which motion of defendant was overruled by the court. To which action of the court in overruling the motion to strike out said testimony, defendant in open court excepted, tenders this its bill of exceptions and prays that the same may be examined, signed and approved by the court and ordered filed as a part of the record in this cause."

It will be noted that the testimony objected to and asked to be stricken out is not set out in the bills of exception, but the record must be consulted for its ascertainment. It appears from the record, the death of the father and mother of the insured being conceded, the appellee, for the purpose of proving the date and place of Jay's birth by the declarations of his father, offered in evidence the deposition of Dr. J. M. Williams, the medical examiner of appellant, who, among other things, testified as follows:

"The application was made at the drug store of Williams & Landrum, now Gaddis' drug store, in the town of Cotulla. Jordan and George Washington Jay were in my office in the back part of the drug store filling out part one of the application and they came out together and Jordan told me that he wanted me to examine Mr. Jay, but that Mr. Jay did not know when and where he was born. I then told Mr. Jay, or advised him, that that was very important and told him that he had better get his father to come in.

Mr. Jay then went out and brought his father in the drug store and I asked his father how old his son, George Washington Jay, was, and Mr. Jordan asked him as to the place his son was born. Mr. Jay told us the age of his son and the place where he was born and when he was born, and Mr. Jordan went up to the counter and filled in the answers to the place and date of birth of the applicant and his age in part one where it had been left blank, and then handed the application to me to make the examination. I then asked Mr. Jay's father, who was still present, for the family history of George Washington Jay, in regard to the ages of his brothers, sisters, mother and father and grandparents, and he gave them to me and I put them down on a piece of paper, as well as the age of George Washington Jay. . . . In writing down the answers to all questions in parts two and three in the application relating to the age of the applicant and the ages of his father and mother, sisters and brothers and grandparents, I used the figures and information given me by Mr. Jay's father, Mr. Jay himself stating that he did not know his own age and very little about his family history. I then read the application over to him and he signed it. . . . I was the medical examiner of the Mutual Reserve Fund Life Association in Cotulla, Texas, at that time and had been for about a year. I gave and wrote the answers as to his age and family history from the information given to me by George Washington Jay's father."

It is conceded by the appellant that declarations made *ante litem motam* by a deceased parent as to the date and place of birth of his child are admissible as evidence of such facts; but the insistence is that the declarations of the insured's father, testified to by Dr. Williams, that he was born in Owensville, Robertson County, Texas, on January 1, 1864, were made *post litem motam* and were not, therefore, admissible. This contention is predicated upon the fact that at the time such declarations were made by the father he knew that his son was making application for a policy of insurance and knew that it was necessary to insert in the application the place and date of his birth and that the declarations were material. While this, except as to the declarations being *post litem motam,* is so, it affords no basis for appellant's contention. The phrase *"lis mota"* is understood to mean the commencement of the controversy. Westfeldt v. Adams, 131 N. C., 379, 42 S. E., 826. "With reference to the meaning of the term *lis mota,* in Monkton v. The Attorney-General (2 Russ & Myl., 147), Mr. Justice Lawrence said: 'Declarations *post litem motam*—not merely after the commencement of the law suit, but after the dispute has arisen, for that is the primary meaning of the *lis*—ought not to be received in evidence.' After the controversy has originated, all such declarations are to be excluded. The courts insist that the dip into the stream of time which flows from the event in question shall be taken at some place above the point where strife or dissension may have polluted the water." Gillett, Ind. & Collat. Ev., sec. 133. Unless it can be said that the application for an insurance policy is the commencement of the controversy between the company who issues it and the beneficiary named therein, we can perceive the existence of no *lis mota* when the dec-

larations of the father of the insured as to the place and date of
his birth were made to the witness. Between whom was there then
any contention, dispute or contrariety of opinion? Or what was there
to contend, dispute or disagree about? It takes at least two to
commence a controversy and there must be either an actual or a
supposed cause for the contention. Neither appellant's agent nor the
applicant for the insurance policy knew the latter's age or place of
birth, which were important and essential to be stated in the appli-
cation; each wanted to ascertain the truth regarding these matters;
the one for the purpose of issuing the policy and obtaining the
premiums, the other for the purpose of obtaining an insurance policy
on his life for the benefit of his wife; to obtain the desired infor-
mation, they naturally resorted to his father, who, of all persons
then living, was most likely to be cognizant of the facts they wished
to learn; he had no interest in the matter, nor could he anticipate
any; there was no reason why he should state any thing except the
truth in regard to the matters of inquiry; but an the contrary,
cogent reason for his telling nothing else; for knowing that the
matter was important, and that the information sought would affect
his son's application for insurance, and the application the validity
of the policy applied for, it is inconceivable that he would wrong
his son, when he should be in his grave, by making a false state-
ment which would deprive his widow of the benefit of the contract
he was about to make for her. The *lis mota* is the beginning of
the controversy which culminates in the law suit which grows out
of it, and in which the parties to it invoke the jurisdiction of the
court to hear and determine it. This controversy may begin long
prior to the suit instituted to settle and determine it, and when
begun, declarations afterwards made by third parties on either side
concerning it are *post litem motam* and inadmissible as evidence up-
on the trial of the suit brought to settle the controversy. Why?
Because, to continue the metaphor above referred to, the dip in the
stream of time which flows from the event in question is made for
the declaration at or below the point where strife or dissension has
or may have polluted the water. It is because the "dip" for the
evidence is made at a point below where the water has been polluted
by the controversy and not above it. The controversy out of which
this suit grew did not and could not, from its very nature, com-
mence until after the death of the insured. The history of the case
shows this. It was then commenced between the appellant and the
appellee regarding the liability of the former to the latter upon the
insurance policy and culminated in her bringing this suit. The con-
troversy arose from the assertion by the appellant that the state-
ment in the application of the insured for the policy of the date
and place of his birth was false, and the denial of the assertion by
the appellee. The entire controversy depended upon the decision of
this issue between the parties, and to it the evidence was directed.
From this it is clear that the declarations of the insured's father,
made to Dr. Williams, were *ante litem motam,* for the "dip" in the
stream of time which brought them up was made at a place above
the "point of strife which may have polluted the water." It might

as well be contended that the declarations made by the parents, since deceased, as to the date and place of their son's birth, made at the baptismal font are *post litem motam* and inadmissible as evidence in a case brought where the doctrine of primogeniture obtains by the child against his brother to determine his right of inheritance, as to contend that the declarations in question of Jay's father were inadmissible for such reasons. For in the supposed case, just as in this, a controversy might have arisen after the declarations were made in which it would be material to ascertain whether or not the facts so declared were true. Statements and declarations may be and often are made regarding matters about which a controversy might arise, in the absence of such declarations, for the very purpose of preventing such controversy or determining the truth of such matters in the event a dispute should arise in regard to them. And to hold such declarations *post litem motam* and inadmissible after the death of the declarant would be to abrogate the rule upon which such testimony is founded and render it impossible in many cases for a party to prove the facts upon which his rights depend. To deprive one of the only evidence by which his right to property can be determined, is to deprive him of the property itself.

The insured's sister had no recollection of the time when or of the place where he was born. She only testified as to her recollection of what she herself had been told, and from her memory of a record she had seen of the date of her brother's birth, said to have been made by her mother, the truth or authenticity of which she knew nothing. Therefore her testimony did not render the declarations of her father inadmissible, but could only affect its weight.

For these reasons we think the first and second assignments of error are not well taken, and overrule them both.

2. We can perceive no error in the court's charging the jury: "The burden of proof is upon the plaintiff to establish her case by a preponderance of the evidence, and unless she has done so you will find for the defendant. By a preponderance of the evidence is meant the greater weight of the evidence." The definition given of the term "preponderance of evidence" was accurate (W. U. Tel. Co. v. James) and if either party could complain of its being given, it would be the plaintiff, for she had the testimony of only one witness upon the issue as to the date of her husband's birth, while the defendant had several, and had the jury taken the term "weight of evidence" to mean the greater number of witnesses it would have been to her, instead of to defendant's, prejudice. Or at least, such a contention might seem plausible had the verdict been in defendant's favor.

3. The fourth assignment of error complains of the court's refusal to peremptorily instruct a verdict in defendant's favor. The propositions under this assignment assume that the declarations of the deceased's father, testified to by Dr. Williams, were false; and that, therefore, there was a breach of warranty as to the age of the insured, which under the terms of the contract, defeated plaintiff's right to recover on the policy. This assumes the very matter to be determined. How are we to know that such declarations are false?

This was a question for the jury to determine, not us. While the testimony of the defendant's witnesses may tend to show the falsity of the declarations, the declarations tend equally to show the falsity of their testimony. As it can not be said as a matter of law which theory was correct—that which plaintiff's testimony tended to show, or that which defendant claims was established by his—it was necessarily a question of fact for the jury to determine. And, there being evidence tending to support the verdict, it is not our province to disturb it. Galveston, H. & S. A. Ry. v. Murray, 99 S. W., 144; Galveston, H. & S. A. Ry. v. Garrett, 98 S. W., 932; Mutual Res. Ins. Co. v. Jay, 101 S. W., 549. This disposes also of the fifth and sixth assignments of error, which complain that the court erred in overruling defendant's motion for a new trial upon the grounds that the verdict is contrary to the great preponderance of evidence and is contrary to the law.

4. The seventh assignment of error is as follows: "The judgment of the court, entered upon the verdict of the jury, is contrary to the law in this: The jury rendered a verdict, awarding, among other items, the sum of $240 statutory penalty, the aggregate of the verdict being $3,158.67. Upon this whole sum the court awarded six percent interest from the date of judgment, which meant interest at six percent upon the penalty of $240; whereas, the rules of law do not, in the absence of statutory authorization, permit the recovery of interest on a penalty. Hence, in thus framing its judgment, the court erred to the prejudice of defendant."

It will be observed from reading article 3071, Rev. Stats., 1895, that the additional twelve percent upon the amount of the policy, therein provided for, is not pronounced a penalty but is declared "damages," and every contract of insurance of the nature of the one under consideration entered into in this State is made in view of this article, and its provisions enter into and form a part of it. In the verdict no interest upon the amount represented by this twelve percent is assessed, but interest only is charged upon the amount represented in the judgment from the time it was rendered, and it being provided by article 3105 Rev. Stats., that "All judgments of the several courts of this State shall bear interest at the rate of six percent per annum from date of judgment, except etc.," and the judgment here not being within the exception, we think the whole of it should bear interest as is provided by the statute. Suth. on Dam., sec. 333.

There is no error in the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.