MANHATTAN LIFE INS. CO. v. COHEN.†

(Court of Civil Appeals of Texas. San Antonio. May 31, 1911. Rehearing Denied June 21, 1911.)

1. INSURANCE (§ 122*)—INSURABLE INTEREST —ASSIGNMENT OF POLICY.

An assignment of a life policy to one without an insurable interest is valid in Texas only to the extent of reimbursing the assignee for the amounts paid out by him, with interest thereon, since, except to that extent, the transaction is a mere gambling contract, and contrary to public policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 166, 167; Dec. Dig. § 122.*]

2. INSURANCE (§ 615*)—DEFENSE—PAYMENT OF POLICY — PERSON NOT ENTITLED TO PAYMENT—ASSIGNEE.

Where an insurance company had knowledge at the time it paid the face value of policies to an assignee having no insurable interest in insured's life that such assignee claimed to own all of such proceeds adversely to insured's estate, less the amount of loans due to the insurer, and that the assignee would not recognize a trust in favor of those equitably entitled to the benefit of the funds, taking from such assignee a bond to indemnify it against liability from such payment, it was not entitled to defend on the theory that it was entitled to pay the proceeds to the assignee as trustee for the benefit of those entitled in equity to receive the same.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 615.*]

3. INSURANCE (§ 200*) — POLICIES — ASSIGNMENT—VALIDITY—WHAT LAW GOVERNS.

Where life insurance policies belonging to a resident of Texas were assigned and delivered to the assignee's agent in Texas, the validity of the assignment was governed by the Texas laws, and not by the laws of Georgia, where the assignee resided.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 469; Dec. Dig. § 200.*]

4. INSURANCE (§ 212*) — POLICIES — ASSIGNMENT.

Where life policies are assigned, neither payment of the consideration nor delivery of the policies is essential to pass title; delivery of the assignment to the assignee's agent being sufficient for that purpose.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 481; Dec. Dig. § 212.*]

5. INSURANCE (§ 615*)—ACTION FOR PROCEEDS —ASSIGNMENT—DEFENSES.

In an action by insured's executor to recover the proceeds of certain life insurance policies, it was no defense to the insurance company that it had paid the proceeds to an assignee, who had received an assignment of the policies from insured in consideration of an advance of moneys to be used in gambling transactions in futures, nor was the insurance company under such circumstances entitled to withhold for the benefit of the assignee the amount advanced to the insured under such assignment.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 615.*]

6. CONSTITUTIONAL LAW (§ 317*)—INSURANCE (§ 675*) — DUE PROCESS OF LAW — ATTORNEY'S FEES—RECOVERY.

Rev. St. 1895, art. 3071, authorizing the recovery of attorney's fees in an action on an insurance policy in case plaintiff shall recover, is not unconstitutional, as depriving the insurance company of its property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 317;* Insurance, Cent. Dig. § 1806; Dec. Dig. § 675.*]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by David Cohen, as executor, against the Manhattan Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

W. J. Moroney, for appellant. Hunt, Myer & Teagle, for appellee.

NEILL, J. David Cohen, as executor of the estate of Jacob Cohen, deceased, brought this suit against the Manhattan Life Insurance Company of New York, to cover principal and interest alleged to be due on two life insurance policies for $3,750 each, issued by said company on the life of Jacob Cohen. The plaintiff also prayed for statutory damages and attorney's fees.

In its answer the defendant averred that the insured, Jacob Cohen, borrowed $875 from it on the policies and then sold them to J. H. Hilsman of Atlanta, Ga., for $460, and that the insurance company had paid to Hilsman their face values, less the amount of the loans it had made thereon.

The suit was tried without a jury; and the court, holding that the assignment of the policies to Hilsman was void, refused to give credit for the $460 paid by Hilsman to the insured as the consideration for such assignment, and rendered judgment in favor of plaintiff for the face value of the policies, less the sums lent the insured by defendant company, which was for $5,750, with interest thereon at the rate of 6 per cent. per annum from June 10, 1908, total $6,459.17, for $690 statutory damages, and $700 attorney's fees, with interest at the rate of 6 per cent. per annum from date of judgment.

Conclusions of Fact.

It was agreed between the parties that certain facts should be considered as established and undisputed, but that either party should have the right to offer on the trial any legal and competent evidence, not in conflict with such agreement, and subject to objections, if any, as may be made, and that

the parties might amend their pleadings to conform to the agreement as they should deem proper; but that in rendering judgment proper legal effect should be given the facts set out in the agreement, whether sufficiently pleaded or not. These are the facts comprehended by the agreement:

(1) On April 7, 1893, Jacob Cohen resided in Galveston county, Tex., and the Manhattan Life Insurance Company was then, and still is, a life insurance corporation duly incorporated under the laws of the state of New York. On said date (April 7, 1893) it was doing a life insurance business in Texas under a proper license. It was not doing or licensed to do business in Texas when this suit was filed on May 15, 1908, but about July 1, 1908, it was again licensed to do and is now doing business in Texas as a life insurance company.

(2) On April 7, 1893, said insurance company issued to Jacob Cohen two policies of insurance on his life for $3,750 each, payable, in case of his death, and subject to the various provisions therein stated, to his executors, administrators, or assigns. Said policies were numbered, respectively, 84,873 and 84,874. A copy of said policy No. 84,873, with a subsequent indorsement, is attached to the first amended original answer of said insurance company, marked "Exhibit A," and the same is made a part of this agreement, and it is hereby referred to for greater particularity. Said policy No. 84,874 was for the same amount and of like date, tenor, and effect, and the same was indorsed in like manner. Said indorsements were authentic, valid, and in accordance with the facts.

(3) Jacob Cohen died in Harris county, Tex., on October 11, 1907. Said policies were in full force and effect, subject to whatever rights the insurance company had under the loans thereon, as hereinafter stated, and also subject to whatever rights J. H. Hilsman may have had under the facts hereinafter stated and as may be proved on the trial hereof. Jacob Cohen was a resident of Bexar county, Tex., at the time of his death.

(4) Jacob Cohen left a will appointing David Cohen independent executor of his estate. Prior to the institution of this suit, said will was duly probated in Galveston county, Tex., and said David Cohen duly qualified and is now acting as independent executor of said estate.

(5) Prior to July 15, 1907, said Jacob Cohen borrowed from said insurance company two sums of $875 each, each sum being secured by a pledge of said policies, and at the time of Jacob Cohen's death there was due said insurance company, on both of said policies, the sum of $1,750, which sum, it is agreed, was a valid charge against said policies and a proper credit on the amount of the same, said amount being $3,750 each, or a total of $7,500; the balance owing by said insurance company on both policies at the date of said Jacob Cohen's death being $5,750.

(6) By instruments, dated July 15, 1907, said Jacob Cohen purported to assign said policies to J. H. Hilsman. A copy of the assignment of said policy No. 84,873 is attached to said amended answer, marked "Exhibit B," and the same is made a part of this agreement, and is hereby referred to for greater particularity. The assignment of policy No. 84,874 was of the same date and of like tenor and effect. In connection with said purported assignments, said Jacob Cohen also executed to said J. H. Hilsman an order on said life insurance company to deliver said policies upon the payment of said $1,750 loan. A copy of said order is attached to said answer, marked "Exhibit B." At the time of said purported assignment, Jacob Cohen resided in San Antonio, Tex., J. H. Hilsman in Atlanta, Ga., and Hilsman had an agent in San Antonio, Tex., through whom the negotiations for the transaction were begun, and the transaction definitely agreed upon; the agreement being that Hilsman would pay Jacob Cohen $460 for his equity in said policies.

After the agreement was made, a correspondence by wire and letter took place between Hilsman, from Atlanta, Ga., and Cohen, at San Antonio, Tex., in regard to the form and manner of formally executing the transfer and assignment of the policies thus agreed upon. The letters of the parties to one another of this correspondence are copied in and made a part of the agreement; but they cover too much space to incorporate them in these conclusions, and we do not deem it essential to a correct solution of any question involved that it should be done.

We deem it sufficient to say that, in accordance with said agreement and directions of Hilsman given in the correspondence, on July 15, 1907, said Jacob Cohen signed and acknowledged the purported agreements and signed an order on the insurance company, and attached the same to a blank draft on Hilsman for $460, and deposited said draft in San Antonio for collection, and the same was paid by Hilsman on presentation to him in Atlanta, Ga., on July 19, 1907, and said assignment and order were then and there delivered to Hilsman with said draft. Hilsman was not related to Jacob Cohen, nor was Cohen in debt to him, unless it should be by reason of the facts above stated, nor did Hilsman have any interest in the life of said Cohen other than this transaction.

(7) Said Jacob Cohen, Hilsman, and his agent were engaged in speculative transactions, and said assignments were made as a part of and in connection with a certain transaction in what is commonly called "cotton futures," the money being paid to and received and used by Jacob Cohen to speculate in future prices of cotton, without its being contemplated that there would be actual de-

livery thereof, or bargain and sale, the said Hilsman or his agent being interested in the transaction, and the purpose of the transaction being known by all the parties, which purpose was carried into effect, through said agency of J. H. Hilsman; he being engaged in the brokerage business.

(8) On April 10, 1908, the insurance company received from both claimants, Hilsman and David Cohen, executor, proofs of death in proper form, to which no objection was made. Each claimant objected to the insurance company paying the other. Hilsman advised the insurance company that he claimed the right to receive the face of the policies, less said $1,750 loan. Plaintiff, David Cohen, executor, advised the insurance company that he also claimed the right to receive the face value of said policies, less the amount of said loan, on the ground that Hilsman had no insurable interest, that the assignments to him were illegal and void for that reason, and also for the reason that said assignments were a part of a gaming transaction, as herein set out. The insurance company admitted liability for the face of the policies, less the amount of said loans, and offered to pay the same to the joint order of the rival claimants, or to pay the money into court if the matter could be so arranged that the parties would appear and interplead in a court of competent jurisdiction, where any judgment that might be rendered would fully protect the insurance company from double liability. Said claimants failing to reach any agreement, on May 6, 1908, Hilsman gave said insurance company a satisfactory indemnity bond, and the insurance company paid to Hilsman the sum of $5,750, being the full face of said policies, less the amount of said loans, and said policies where thereupon receipted in full by Hilsman and surrendered to the insurance company. Before paying said policies to Hilsman, the insurance company had notice that plaintiff, David Cohen, executor, claimed that said assignments were invalid, as aforesaid, and that plaintiff was entitled to recover thereon, but the payment was made because the insurance company was advised that Hilsman was entitled to collect the same, and that in any event the aforesaid indemnity bond would protect it, and because it was advised that it was not practicable to secure a determination of the controversy in a suit where the court would have proper and sufficient jurisdiction of all the parties and the subject-matter. It was not the purpose of the insurance company to contest or delay the payment, and the payment to Hilsman was made under the circumstances above set out. It is not the purpose of this agreement to determine how far, if at all, the facts in respect to notice and good faith are material in this case, that being deemed a question of law, nor is this agreement to be construed as admitting as a matter of law that Hilsman had any right to said policies or their proceeds, or that said payment, or any part thereof, was rightfully made to him. It is, however, agreed as a fact that Hilsman has not been repaid said sum of $460, and the insurance company has not been repaid the amount of said loan, except as above stated, and that nothing has yet been paid plaintiff.

(9) The laws of New York and Georgia, or either of said states, so far as the same may be held to be relevant to any issue in this case, may be proved by introducing in evidence the reports of the opinions of the courts of said states, or either of them, as reported officially, or in the Reporter System, or in any other published reports generally recognized by the courts as authentic and reliable; but the right is reserved to object to such evidence on the ground that such laws are immaterial and irrelevant, but not as to the mode of proof as above set forth, if any such objection shall be overruled.

The foregoing includes the facts incorporated in the agreement of the parties, and is adopted by this court, subject to all the stipulations and conditions contained in the agreement.

Before proceeding further with the conclusions of fact, we will state that it is shown by the record that plaintiff's original petition, filed May 15, 1908, was against the Manhattan Life Insurance Company and J. H. Hilsman as defendants, and, among other allegations, alleged that Hilsman was wrongfully claiming the proceeds of the policies, and sought to adjudicate his claim; that Hilsman neither appeared nor answered in the suit, and as he resided in Atlanta, Ga., no citation, notice, or other process was served on him; and that plaintiff's first amended original petition, which was filed November 11, 1908, omitted Hilsman as defendant.

There was uncontradicted testimony that $1,000 would be a reasonable attorney's fee for bringing and prosecuting this suit for plaintiff and rendering all incidental legal services in connection with the suit. This was sufficient to warrant the court in finding for plaintiff $700 attorney's fees.

In our view of the case, the facts agreed upon, as above stated, together with the finding as to what is a reasonable attorney's fee for bringing and prosecuting this suit for plaintiff, are all necessary to a correct disposition of the case. But as stress is laid upon the evidence introduced as to the law of the state of Georgia, apparent from statutes and decisions, we will state such evidence and in our conclusions of law make some comments on it. Such evidence is as follows:

The defendant introduced in evidence the following decisions of the Supreme Court of Georgia:

"(1) Union Fraternal League v. Walton,

109 Ga. 1, 34 S. E. 317 [46 L. R. A. 424, 77 Am. St. Rep. 350], October 25, 1899, opinion of the court by Little, J. Dissenting opinion by Lumpkin, P. J. The effect of this decision, as stated in the syllabus by the court, is as follows: '(1) While a valid contract of insurance cannot lawfully be taken on the life of another by one who has no insurable interest therein, because it contravenes public policy, yet, as one has an insurable interest in his own life, he may lawfully procure insurance thereon for the benefit of any other person whose interest he desires to promote. Such a contract cannot be defeated because of want of insurable interest in the beneficiary, when it appears that the person whose life is insured acted for himself, at his own expense, and in good faith, to promote the interest of the beneficiary, in taking out the policy. A contract so entered is in no sense a wagering or speculative one. (2) A contract entered into by a benefit society with a member is executory, and its terms will be ascertained from the certificates issued to the member, in connection with the charter and laws of the society, subject to the law of the state under which it was created; and, if nothing exists which restricts the appointment of a beneficiary to receive the benefit fund, the member may, at the time he executes the contract, legally designate whomsoever he pleases as beneficiary, and his right to do so cannot be questioned.'

"(2) Ancient Order United Workmen v. Brown, 112 Ga. 545, 37 S. E. 890, January 24, 1901, opinion of the court by Fish, J. Dissenting opinion by Lumpkin, P. J. The effect of this decision, as stated in the syllabus by the court, is as follows: '(1) A member of mutual insurance order may, when acting in good faith, legally designate, as the beneficiary in a certificate of life insurance issued by the order, one who has no insurable interest in the life of the member, provided there be, at the time the certificate is issued, no restriction in the charter, constitution, or laws of the order, or in the statutes of the state, forbidding the right to appoint such a beneficiary. (2) Although the application and certificate both stipulate that the right of the member to participate in the benefit fund is expressly conditioned upon his compliance with the laws, regulations, and requirements which are or may be enacted by the order, a by-law enacted subsequently to the issuance of the certificate will be given a prospective operation, in the absence of a clear intent that it shall act retrospectively. (3) To render an insurance company liable for attorney's fees, under the provisions of section 2140 of the Civil Code, a demand and refusal to pay 60 days before suit is brought must be plainly averred, and the truth of such averment must be established on the trial. No such demand and refusal being averred and proved in the present

case, the recovery of attorney's fees was not authorized.' In this case a judgment in favor of Mrs. Brown on a life insurance policy was affirmed, although it appeared that she had no insurable interest in the life of the insured, and that she purchased and kept it in force at her own expense.

"(3) Rylander v. Allen, 125 Ga. 206, 53 S. E. 1032 [6 L. R. A. (N. S.) 128], March 28, 1906. Opinion of the court by Fish, C. J.; all the Justices concurring. The effect of this decision, as stated in the syllabus by the court, is as follows: '(1) One has the right to procure insurance on his own life and assign the policy to another, who has no insurable interest in the life insured, provided it be not done by way of cover for a wager policy.'

"(4) Doody v. Green [Ga.] 62 S. E. 984, November 19, 1908. Opinion of the court by Evans, P. J.; all the Justices concurring. This case approves and follows the previous cases above cited. It was agreed by counsel for both parties that this court, or any appellate court to which this case may be taken should have the right to read said opinions at large for a more complete understanding of the same, without incorporating said opinions in the record.

"(5) Defendant also introduced in evidence the following sections of the Civil Code of Georgia of 1895, to wit:

"'Sec. 2114. An insurance upon life is a contract by which the insurer, for a stipulated sum, engages to pay a certain amount of money if another dies within the time limited by the policy. The life may be that of the assured, or of another in whose continuance the assured has an interest.'

"'Sec. 2116. The assured may direct the money to be paid to his personal representative, or to his widow, or to his children, or to his assignee; and upon such direction, given and assented to by the insurer, no other person can defeat the same. But the assignment is good without such assent.'

"'Sec. 3077. All choses in action arising upon contract may be assigned so as to vest the title in the assignee, but he takes it, except negotiable securities, subject to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignment is given to the person liable.'"

Plaintiff introduced in evidence the following statutory provisions and Supreme Court decisions of the state of Georgia, to wit:

"Section 8 of the Georgia Code, which is as follows: 'Lex Loci. The validity, form and effect of all writings or contracts are determined by the laws of the place where executed. When such writing or contract is intended to have effect in this state, it must be executed in conformity with the laws of this state. * * *'

"Section 3668 of the Georgia Code, which is as follows: 'A contract which is against

the policy of the law cannot be enforced. Such are contracts tending to corrupt legislation, and the judiciary * * * wagering contracts. * * *'

"Section 2090 of the Georgia Code, which is as follows: 'To sustain any contract of insurance, it must appear that the assured has some interest in the property or event insured, and such as he represents himself to have. A slight or contingent interest is sufficient, whether legal or equitable.'

"Section 3537 of the Georgia Code, which is as follows: 'Possibility cannot be sold. * * * A bare contingency or possibility cannot be subject to sale unless there exists an express and present right in the person selling to a future benefit; so a contract for the sale of goods to be delivered at a future day where both parties are aware that the seller expects to purchase himself to fulfill his contract, and no skill or labor or expense enters into consideration, but same is in pure speculation and chance, is contrary to the policy of the law, and cannot be enforced by either party.'

"Section 3671 of the Georgia Code, which is as follows: 'Gaming contracts are void, and all evidence of debt or incumbrance or liens on the property executed upon a gaming consideration are void at the hands of any person. Money paid or property delivered upon such consideration may be recovered back from the winner by the loser, if he shall sue for same in six months after the loss, and after the expiration of that time it may be sued for by any person at any time within four years for the joint use of himself and the educational fund of the county.' "

(2) Plaintiff also introduced the following decisions of the Supreme Court of Georgia: "Exchange Bank of Macon v. Loh, 104 Ga. 446 [31 S. E. 459], 44 L. R. A. 380, Lumpkin, Presiding Justice, delivered the opinion. The effect of the decision, as stated in the syllabus by the court, is as follows: '(1) A creditor has, for the purpose of indemnifying himself against loss, but for no other, an insurable interest in the life of his debtor. (2) This interest cannot exceed in amount that of the indebtedness to be secured. (a) Such indebtedness may, however, include the cost of taking out and keeping up the insurance, if made a charge against the debtor or his estate, or upon the proceeds of the property when collected.'

"In Quillian v. Johnson, 122 Ga. 49, 49 S. E. 801, the Supreme Court of Georgia holds that: 'Irrespective of whether or not the owner and holder of a policy of insurance on his own life may legally sell and assign the policy to one having no insurable interest in his life, the policy holder is certainly not at liberty to make the policy the subject-matter of a purely wagering or speculative contract between himself and a person having no interest therein.'

"In Hines v. Bank & Trust Company, 120 Ga. 711, 48 S. E. 120, the Supreme Court of Georgia holds that the mere knowledge of the lender of money that the borrower intends to use it for an illegal or immoral purpose will not prevent a recovery of the money loaned, unless the lender participated in the illegal transaction or did something to further the consummation of the unlawful design."

### Conclusions of Law.

The first assignment of error is as follows: "The court erred in rendering judgment for the plaintiff for any amount, because the evidence shows conclusively that the defendant insurance company had paid the full amount due on the life insurance policies to J. H. Hilsman, who, in any view of the law or facts, had at least sufficient interest in said policies to authorize him to collect the same, and the payment to Hilsman discharged the insurance company from liability, and any claim that plaintiff may have is against Hilsman, and not against the insurance company."

Under the assignment is asserted this proposition: "A life insurance company may rightfully pay the amount of a policy to an assignee holding the apparent legal title conferred by the insured, or other legal owner of the policy, and such payment discharges the insurance company from liability, regardless of any equities that may exist between the assignee and the original holder of the policy."

[1] It is a general rule that one who has no insurable interest in the life of another may not take out an insurance policy upon it, and if he does the policy is void as against public policy. But where the policy is taken out by the insured himself for his own benefit, there is an irreconcilable conflict in the authorities upon the question as to whether he may make a valid assignment of it to one who has no insurable interest in the life of the assured. This conflict grows out of the general rule above stated. In some jurisdictions it is held that the same principle of public policy which inhibits one from insuring the life of a person in whom he has no insurable interest forbids him from taking an assignment of a policy taken out by the insured for his own benefit. In others it is held that such an assignment is not affected by public policy, and that it is of the same validity as the assignment of any other chattel. There are modifications and exceptions to either rule, of which we need only notice such as may affect the disposition of this case.

In this state an assignment of such a policy to one without an insurable interest is regarded as valid only to the extent of reimbursing the assignee for amounts paid out by him, with interest. If the assignee has paid out nothing for which he is in equity entitled to be reimbursed, the assign-

ment is void; but if he has, because of the benefit received by the beneficiary or the estate of the insured, the assignee is allowed such reimbursements, and the balance of the insurance money goes to the estate or the beneficiary. The ground for holding the assignment void, except for the purpose of reimbursing the assignee, is that such transaction is a mere gambling contract, and that it is against public policy to create an interest in the early death of the insured on the part of one having no corresponding interest in his life, which is the case where the policy is assigned for an amount less than its face value. Coleman v. Anderson, 98 Tex. 570, 86 S. W. 730; Id. (Civ. App.) 82 S. W. 1057; Kelly v. Searcy, 100 Tex. 571, 102 S. W. 100; Cheeves v. Anders, 87 Tex. 291, 28 S. W. 274, 47 Am. St. Rep. 107; Insurance Co. v. Hazelwood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893; Shonfield v. Turner, 75 Tex. 329, 12 S. W. 626, 7 L. R. A. 189; Cawthon v. Perry, 76 Tex. 383, 13 S. W. 268; Cameron v. Barcus, 31 Tex. Civ. App. 46, 71 S. W. 423; Dugger v. Insurance Co., 81 S. W. 335; Fletcher v. Williams, 66 S. W. 861; Wilton v. Ins. Co., 34 Tex. Civ. App. 156, 78 S. W. 403.

The courts of Alabama, Kansas, Kentucky, Missouri, Pennsylvania, and Virginia hold with Texas that such assignments are invalid, on the ground that they are opposed to public policy. Alabama Gold L. Ins. Co. v. Mobile Mut. Ins. Co., 81 Ala. 329, 1 South. 561; Helmetag v. Miller, 76 Ala. 183, 52 Am. Rep. 316; Missouri Valley L. Ins. Co. v. Sturges, 18 Kan. 93, 26 Am. Rep. 761; Ins. Co. v. McCrum, 36 Kan. 146, 12 Pac. 517, 59 Am. Rep. 537; Met. L. Ins. Co. v. Elison, 72 Kan. 199, 83 Pac. 410, 3 L. R. A. (N. S.) 935, 115 Am. St. Rep. 189; Basye v. Adams, 81 Ky. 368; Beard v. Sharp, 100 Ky. 606, 38 S. W. 1057; Bromley v. Washington, 122 Ky. 402, 92 S. W. 17, 5 L. R. A. (N. S.) 747, 121 Am. St. Rep. 467; Mutual Life Ins. Co. v. Richards, 99 Mo. App. 88, 72 S. W. 487; Downey v. Hoffer, 110 Pa. 109, 20 Atl. 655; Keystone Mut. Ben. Association v. Norris, 115 Pa. 446, 8 Atl. 638, 2 Am. St. Rep. 573; Gilbert v. Moose, 104 Pa. 74, 49 Am. Rep. 470; Hoffman v. Hoke, 122 Pa. 377, 15 Atl. 437, 1 L. R. A. 229; Tate v. Commercial Association, 97 Va. 74, 33 S. E. 382, 45 L. R. A. 243, 75 Am. St. Rep. 770; Roller v. Beam, 86 Va. 512, 10 S. E. 241, 6 L. R. A. 136.

But the rule in Georgia is that the assignment of a life insurance policy to one having no insurable interest is valid, when the assignment is not made by way of cover for a wager policy, as is seen by the decisions of her courts and statutes introduced in evidence in this case. This seems to be the law in the majority of the states. According to this theory, an assignment to any person is valid in the same manner and to the same extent as an assignment of any other chose in action would be; and the assignee takes the entire interest in the policy. The reason up-

on which this theory is based is that, were it otherwise, insurances of lives would lose much of their value and usefulness.

For cases and case notes presenting these two conflicting theories, attention is specially called to Metropolitan L. Ins. Co. v. Elison, 72 Kan. 199, 83 Pac. 410, 3 L. R. A. (N. S.) 935, and Rylander v. Allen, 125 Ga. 206, 53 S. E. 1032, 6 L. R. A. (N. S.) 129, as reported and edited in that splendid series of reports.

[2] Before considering the question as to which of these conflicting theories—that of Texas or of Georgia—is applicable to the assignment of the policies involved in this case, we will first dispose of appellant's contention that, even under the rule which obtains in this state, as applied by its courts, appellant was authorized to pay the amount due on the policies to Hilsman, the assignee.

To sustain the contention, appellant relies on Schonfield v. Turner, Cheeves v. Anders, and Insurance Co. v. Williams, supra, which hold, in substance, that an assignee or a named beneficiary of a life insurance company, who has no insurable interest in the life of the assured, may nevertheless collect the policy and, after appropriating what he may be entitled to receive of the proceeds, pay the balance to the estate of the insured or to those entitled to receive the same. This is on the principle that he holds the policy in trust for those who are under the law justly entitled to the proceeds, and as such trustee may collect the amount due; the proceeds when collected being charged in his hands with the trust in favor of those who are in law and equity entitled to the same.

But that doctrine can have no application in this case. Here, as admitted by the defendant in the agreement upon which the case was tried, the insurance company knew when it paid Hilsman the face value of the policies that he claimed them as his own adversely to the estate of the insured; that as the owner he claimed he was entitled to the entire amount, less the sum of the loans due the insurer, as his own property, independent of the claims of the executor of the estate of Jacob Cohen; and that when paid to him that he would hold the same as his own, without recognition of the trust in favor of those who were equitably entitled to the benefit of such funds. In other words, with full knowledge of the claim of Cohen's executor to the amount due on the policies, and the ground upon which it was based, and that Hilsman denied the existence of the trust that equity charged him with, and of his entire repudiation of the same, and that he would appropriate the proceeds of the policy to his own exclusive benefit in violation of the right of the insured's executor therein, it paid the face value of the policies to him, thus aiding and abetting and enabling him to acquire possession of money which the law charged it with knowledge that the fund belonged to the insured's es-

tate, well knowing that Hilsman would hold it against the rights of the real owner. The company's hands are not clean, for they have given to one money to keep which it knew was not his, but another's. There are no waters nor lotions in a court of equity with which foul hands can be cleansed.

Since the insurance company took indemnity from Hilsman for the wrong done the plaintiff executor, and is now defending this suit in his interest, rather than its own, it must be regarded as standing in his shoes, and it can no more be heard to say that it had the right to pay the money to him than he could, were he before the court defending this action. If he could successfully defend it, the company can; if not, the company cannot.

[3] This brings us to a consideration of the question whether the law of Texas or of Georgia, in regard to the validity of the assignments, obtains in this case. The solution of this question will require an inquiry into the principles arising from conflict of laws of different jurisdictions, in their application to transactions of the character under consideration.

There is also a conflict in the authorities as to what law governs in determining the validity of an assignment of an insurance policy. If the question has ever been decided in this state, the writer cannot recall the decision. But the principle established by the weight of authority seems to be that an assignment of a policy of insurance, or the benefit thereunder, is a contract distinct and separate from the original contract of insurance, and is governed by the law of the place where the assignment was made, without reference to the place where the original contract was made, or to the law governing the contract. 2 Wharton, Conf. of Laws, 467g. See the entire section and the authorities cited in notes for the rule stated and its exceptions and limitations. See, also, Johnson v. Mutual Life Ins. Co., 180 Mass. 407, 62 N. E. 733, 63 L. R. A. 833, especially note "h," page 858.

We take it that the evidence establishes beyond dispute that the assignment of the policies here involved was made in Texas, and that it is governed by the rule stated. Hence the liability of the insurance company on the policies is determinable by the laws of this state, and not of Georgia.

Even if the assignment of the policies had been made in the state of Georgia, and it should be held valid under the laws of that state, it may be doubted whether, on account of its being contrary to the distinctive policy of the forum in which this suit was brought, such laws would be given effect by the courts of Texas. 1 Whart. on Conflict of Laws, § 4a. For the same principle upon which the policy of this state is based, i. e., to protect the life of its citizen against the temptation of an assignee of a life policy who has no insurable interest in the life of the insured to shorten its duration, might be held to obtain in its forum, regardless of where the assignment was made. Barry v. Equi. Ins. Co., 59 N. Y. 587.

But it is doubtful whether, in view of the disparity between the amount paid by Hilsman for the policies and the amount due and collected on the policy by him—the amount paid being only $460 and the sum collected by him being $5,750, an excess of $5,290—the courts of Georgia would not hold the contract of assignment "purely a wagering or speculative contract" between the insured and the assignee, who had no insurable interest in the former's life. It is indicated in the case of Quillian v. Johnson, 122 Ga. 49, 49 S. E. 801, introduced in evidence by the plaintiff, that such would be their holding, and we think from the weight of authorities, which we have not time to fully consider or cite, that it ought to be. Beach on Ins. § 1142; May on Ins. §§ 73–75. However, in our view of the case we deem it unnecessary to decide either of these questions.

[4] What we have said in considering the first assignment of error also disposes of the second, under which it is contended by appellant that the assignment of the policies was a Georgia contract, and all questions as to its validity and effect should be determined by the laws of that state. If, as this assignment assumes, the assignment of the policies was a Georgia contract, it may be that the plaintiff would not be entitled to recover anything. But such assumption is fallacious. As is said by the counter proposition of appellant under this assignment: "Neither the payment of the purchase price of the policies, or their delivery to Hilsman, was necessary to pass title, and, therefore, the terms having been agreed upon by Cohen and Hilsman's agent at San Antonio, the assignment having been executed there and delivered to a bank in that city by Hilsman's instructions, the contract was not only entered into, but was consummated, in Texas." This is fortified and sustained by these authorities: Mechem on Sales, vol. 1, §§ 483, 484 ; Rail v. Little River Falls Lbr. Co., 47 Minn. 422, 50 N. W. 471; Embree-McLean Car. Co. v. Lusk, 11 Tex. Civ. App. 493, 33 S. W. 154; Am. & Eng. Ency. of Law, vol. 24, p. 1052; Beardsley v. Beardsley, 138 U. S. 262, 11 Sup. Ct. 318, 34 L. Ed. 928; State v. Rosenberger, 212 Mo. 648, 111 S. W. 511, 20 L. R. A. (N. S.) 284, 126 Am. St. Rep. 580; Wheless v. Meyer (Mo. App.) 120 S. W. 712; Henline v. Hall, 4 Ind. 189; Sweeney v. Owsley, 53 Ky. 413; Jenkins v. Jarrett, 70 N. C. 255; Morey v. Medbury, 10 Hun (N. Y.) 540, and the argument of his counsel under it. While other counter propositions are advanced, we think the first sufficiently answers appellant's contention.

[5] The third assignment is: "The court erred in rendering judgment for plaintiff for any amount, because the evidence shows that the insurance policies were transferred by

the insured to J. H. Hilsman as part of an illegal transaction, of such a character that plaintiff is entitled to no relief in law or in equity."

Under it this proposition is asserted: "When an insurance policy is assigned as part of a gaming transaction, the law will give no relief to either party, or to their heirs, executors, or assigns, regardless of all other questions, but will leave the parties where they have voluntarily placed themselves."

The principle of law enunciated by the proposition has no application to this case; but, on the contrary, the principle enunciated in appellee's counter proposition, which is: "The consideration for the assignment of these policies having been advanced by Hilsman for the express purpose of assisting the insured to participate in a gambling transaction with said Hilsman and his agent at San Antonio, Tex., the consideration was void in law and the attempted assignment of the policies for that reason alone vested no right in Hilsman to either the policies or the proceeds thereof"—obtains. Acts Texas Leg. 1907, p. 132; Logan v. Norris, 100 Tex. 228, 97 S. W. 820; Jones v. Aiken (Civ. App.) 80 S. W. 385; Seeligson v. Lewis, 65 Tex. 220, 57 Am. Rep. 593; Hines v. Bank & Trust Co., 120 Ga. 711, 48 S. E. 120; Bigelow v. Benedict, 70 N. Y. 206, 26 Am. Rep. 573; Story v. Salomon, 71 N. Y. 422; Civil Code of Georgia, § 3668; Quillian v. Johnson, 122 Ga. 49, 49 S. E. 801.

The principle that a court will not enforce an illegal contract is applied between the parties to that contract only. The law leaves them in the same attitude they have placed themselves in, declining to have anything to do with a transaction which it denounces as illegal. To illustrate: If the contract of assignment between Jacob Cohen and J. H. Hilsman had been breached by either party —i. e., if the former had received the consideration and refused to assign the policies to the latter, or if the latter had received the policies under the assignment from the former and refused to pay the consideration —the law would have aided neither in enforcing the agreement as against the other.

But here it is the contract of insurance, made between the insurance company and the insured, that is sought to be enforced by the latter's executor, to which Hilsman was in no way a party. Had he sought to enforce it through the medium of the courts, he would have been met by the inquiry, "What right have you to the money due on these policies?" His only true answer would have been, "I own them under an assignment from the beneficiary, which the law denounces as illegal and pronounces as void." Then would the court say unto him, "Depart from me, ye wicked; I know you not."

It would be preposterous to hold that that which is void as against public policy can be validated by a contract which is also void as against public policy. If the doctrine that "an estoppel against an estoppel sets the matter at large" obtains, it may not relieve the appellant from its embarrassed position in which it has placed itself by paying Hilsman the money due on policies on an assignment to him which is doubly void; i. e., void for two separate and distinct reasons, each having its foundation in sound public policy.

In this connection we will dispose of the assignment which complains of the court's refusal to allow the defendant credit for the $460 paid by Hilsman to the insured from date of such payment. It is seen from what we have said that, as the contract of assignment under which this money was paid was void for two grounds, and, for that reason, conferred no right to or interest in the policies in the assignee, and the payment of the money to him was as though it had been made to a stranger, this can afford no defense to the action of the executor of the estate of the insured for the entire amount due on the policies.

[6] The remaining assignments complain of the court's adjudging the attorney's fees and statutory damages under article 3071, Rev. Stats. of 1895, against the defendant. This statute is assailed upon the ground that it contravenes the fourteenth amendment of the Constitution of the United States. The Supreme Court of the United States has held to the contrary. Fidelity Mut. L. Association v. Mettler, 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922. See, also, Farmers' & M. Ins. Co. v. Dobney, 189 U. S. 301, 23 Sup. Ct. 565, 47 L. Ed. 823. With the exception of Insurance Co. v. Smith (Civ. App.) 41 S. W. 684, such has been the uniform holding of the courts in this state. Insurance Co. v. Chowning, 86 Tex. 654, 26 S. W. 982, 24 L. R. A. 504; Mutual L. Ins. Co. v. Blodgett, 8 Tex. Civ. App. 45, 27 S. W. 286; Fidelity & C. Co. v. Allibone, 90 Tex. 660, 40 S. W. 399; Woodmen of the World v. Carrington, 41 Tex. Civ. App. 29, 90 S. W. 921; Penn. Mut. L. Ins. Co. v. Maner, 101 Tex. 553, 109 S. W. 1084; Insurance Co. v. Jay, 50 Tex. Civ. App. 165, 109 S. W. 1117.

As is said in Insurance Co. v. Jay, supra: "The additional 12 per cent. upon the amount of the policy therein provided for (referring to article 3071, Rev. Stats.) is not pronounced a penalty, but is declared 'damages,' and every contract of insurance of the nature of the one under consideration entered into in this state is made in view of this article, and its provisions enter into and form a part of it." The action of the insurance company in paying the money due on the policies was not, as in Insurance Co. v. Woods Nat. Bank (Civ. App.) 107 S. W. 119, an offer of the insurance company to pay to the one of the two real claimants, when it should be determined who he was, but a voluntary payment to the rival claimant, who had no right whatever to the amount due on the policy. The company has indemnified

itself against its act in paying the money due on the policy to one who was not entitled to receive it; now let it resort to its indemnity.

The judgment is affirmed.